## PINELLAS UTILITY BOARD v. FLORIDA POWER CORP., et al.

Circuit Court, Pinellas County.

July 12, 1954.

Fisher & Sauls and Allen C. Anderson, all of St. Petersburg, for plaintiff.

Stephen E. Simmons, Bussey & Simmons, St. Petersburg, for defendants.

ORVIL L. DAYTON, Jr., Circuit Judge.

On May 25, 1950 Florida Power Corporation (hereafter referred to as "the corporation") brought suit against Pinellas Utility Board (hereafter referred to as "the board") alleging that the rates to be charged by the corporation for electricity consumed by users in Pinellas County, as prescribed in the board's resolution no. 51, were so low as to be confiscatory. The bill prayed for an injunction restraining the board from putting into effect the proposed rates. As a condition for the issuance of a temporary restraining order the corporation was required to furnish a bond in the sum of $175,000—

> . . . conditioned to pay all costs and damages which may be sustained by the defendants herein or by the consumers of electricity in Pinellas County, or any and all other persons, firms or corporations affected or damaged by the wrongful issuance of this injunction, in case said injunction is dissolved or the bill of complaint herein is dismissed, and particularly to refund to said consumers the difference between the rates presently in existence for electricity sold by plaintiff in Pinellas County, and the new rates prescribed therefor by said resolution no. 51 if the lower rates are ultimately sustained by the courts. The phrase "costs and damages" as used herein shall include all reasonable engineering, accounting and legal fees and other costs and expenses paid or incurred by Pinellas Utility Board in the defense of this suit in the event such items are adjudged in appropriate proceedings to be legally recoverable as damages flowing from or traceable to a wrongful issuance of said injunction.

The present suit is brought by the members of the board to recover from the corporation and its surety the sum of $76,484.83 as costs and damages sustained by the board as a result of the alleged wrongful issuance of the injunction. A schedule attached to the complaint lists the items for which recovery is sought, being principally legal and engineering fees incurred in the original suit.

In its answer the corporation admits the execution of the bond but denies that the damages claimed by the board are traceable to the wrongful issuance of the injunction or that such damages are legally recoverable in this proceeding. The corporation has filed its motion for a summary judgment alleging that no genuine issue of any material fact appears in the pleadings for determination by trial, and that defendants (the corporation and its surety on the bond) are entitled to judgment as a matter of law.

To obtain a proper comprehension of the questions here involved it has been necessary for the court to make a careful study of the original suit in which the injunction was issued and the bond furnished, as well as the applicable statutes, the decisions of our Supreme Court and the courts of other jurisdictions. In my opinion this is the principal question to be determined—are the sums of money expended by the board for legal, engineering and other services, in defense of the suit brought by the corporation to determine the alleged confiscatory nature of rates established by the board, legally recoverable as damages flowing from or traceable to a wrongful issuance of the injunction in such suit?

The purposes of the injunctive order were to restrain the board from enforcing the rates established by its resolution no. 51 until the alleged confiscatory nature thereof could be ultimately determined by the courts and to require the corporation to pay into a designated depositary such sums of money as represented the difference between the existing rates and the rates established by the resolution.

Subsequently a final decree was rendered in the original suit and notice of appeal was filed. The appeal, however, was later dismissed and the original proceedings dismissed and the injunction dissolved. The sums of money representing the difference between the rates charged by the corporation and the rates established by the board (which had been held in a depositary during the pendency of the suit) were refunded to the consumers. The question thus presented to the court may perhaps be reduced to the following terms—what, if any, of the sums expended by the board are traceable to the wrongful issuance of the injunction?

The legislature established the board in chapter 24815, Acts of 1947. Section 2 thereof provided that compensation of all personnel of the board, as well as an attorney and such rate experts or engineers as the board might deem necessary, should be paid by the board of county commissioners. Section 18 also provided that "the costs and expenses" incurred by the board "in the necessary carrying out of the provisions of this Act are to be borne by the board of county commissioners of Pinellas County . . ." Section 16 contained the further provision—

> In the event recourse is had by any utility to the courts to enjoin or otherwise alter the rates promulgated by the Pinellas Utility Board under this act, the circuit court of the state of Florida shall require the said utility, as a prerequisite to the bringing of its suit, to furnish a bond in sufficient amount to protect the people of the county of Pinellas as to any difference in the amounts they pay for electricity under the lower rates, if they are sustained in the courts, from the date of promulgation of the lower rates to the ending of the litigation. Said bond shall be posted in an amount to be fixed and approved by the judge of the circuit court upon the filing of such suit and shall be an obligation to Pinellas Utility Board as trustees for the consumers of electricity, who would be entitled to the lower rate under the promulgation of said rate by the Pinellas Utility Board, and in the event said lower rate is found to be fair and reasonable in the court to which recourse is had, to enjoin, restrain, alter, amend or reject it.

The legislature at its 1951 session enacted chapter 27819, which amended sections 2, 18 and 21 of chapter 24815, Acts of 1947, supra. The 1951 Act, however, again provided that the board might employ an attorney and such rate experts and engineers as it might deem necessary and that "said attorney, experts or engineers and other employees shall be paid by the board of county commissioners of Pinellas County, Florida upon requisition being made therefor."

The 1951 Act in its amendment to section 2 of the original Act contained the following statement—"Provided, however, that should the Pinellas Utility Board determine that expenditures are necessary over and above those approved by the board of county commissioners, and/or the budget commission of Pinellas County, in any fiscal year for the purpose of completing or of defending any litigation in the courts of this state, or the United States arising out of a rate order entered by Pinellas Utility Board, any such sums so expended or authorized to be expended by said board are hereby declared lawful and shall be included in the budget of county commissioners of Pinellas County for the next and forthcoming fiscal year and shall be approved by the budget commission of said county, said sums shall not however exceed the aggregate sum of sixty thousand ($60,000.00) dollars."

Section 18 of the original Act was amended in 1951, and contained the following provisions—"The costs and expenses incurred by the Pinellas Utility Board in the necessary carrying out of the provisions of this act are to be borne by the board of county commissioners of Pinellas County, Florida, in the manner hereinbefore designated and said board of county commissioners is hereby authorized and directed to pay said expenses and costs included in the budget of the Pinellas Utility Board, upon the proper requisition being made therefor."

The corporation supplied the bond in question on May 25, 1950, and the litigation in connection with which it was furnished continued from that date until after the adjournment of the 1951 session of the legislature. The legislature met again in 1953, but in neither session was any measure enacted to change the conditions of the bond provided under section 16 of chapter 24815, Acts of 1947, nor was any measure enacted to amend the other provisions thereof, which required payment for all expenses incurred by the board to be made by the board of county commissioners.

It appears without question that the fees and expenses sought to be recovered here were incurred by reason of the trial of the original suit before the Hon. Victor O. Wehle, circuit judge, which lasted approximately six weeks. The issue to be determined there was the alleged confiscatory nature of the rates for the sale of electricity proposed by resolution no. 51. The entire trial revolved about that question, the record reflects no testimony with regard to the injunction—the court's order dealt with the question of the alleged confiscatory nature of the proposed rates, and is silent as to the injunction.

In Gonzales v. DeFuniak Havana Tobacco Co., 26 So. 1012, our Supreme Court rendered a decision which I regard as persuasive on the present question. That was a suit to recover attorney's fees and expenses from an attachment bond given as ancillary to an action in assumpsit. The Court there held that the attorney's fees and expenses were incurred in defense of the main case and not as a consequence of the issuance of the attachment bond and, therefore, were not recoverable from the amount of the attachment bond.

The board cites and relies strongly on Bailey v. Hymans (Fla.), 76 So. 135, which was a suit for an injunction to restrain the prosecution of an action at law. The giving of a bond as a condition precedent to the issuance of the injunction was required by a statute which fixed the conditions of the bond. The injunction was ultimately dissolved and the suit dismissed on final hearing. Recovery

of attorney's fees and costs was upheld by the Court for the reason that the *legal services were rendered in connection with the dissolution of the injunction*. The sole purpose of the suit was to enjoin the prosecution of a suit at law and therefore any services rendered by defendant's counsel were necessarily directed toward the dissolution of the injunction, the granting of which furnished the *only issue* to be determined.

In my opinion the Bailey case is readily distinguishable from the Gonzales case and from the case at bar for the reason that in the Gonzales case the attachment bond was ancillary to the determination of the principal question. In the present case the injunction bond was ancillary to the main case.

Plaintiff also cites New Amsterdam Casualty Co. v. Utility Battery Mfg. Co. (Fla.), 166 So. 856, which involved the appointment of a receiver and the furnishing of a bond. Again it appears from what I regard as proper analysis that the primary purpose was the appointment of the receiver—and the receivership was inseparable from the other portions of the bill. Recovery of attorney's fees in cases where the bond furnished is inseparable from the main question presented to the court is proper, and it has been so held by our Supreme Court. It was impossible for the court to consider a motion to dissolve the receivership without consideration of the case on the merits. Damages were held to be recoverable which would not have been sustained except for the wrongful appointment of the receiver. In my opinion that case may be distinguished from the case at bar for the reason, inter alia, that the board alleged no damages whatever sustained by reason of the wrongful issuance of the injunction.

In Manning v. Clark, 71 So. 2d 508, our Supreme Court held that a defendant was entitled to recover under a counterclaim for damages resulting from the wrongful appointment of a receiver, holding particularly at page 511 as follows—"On remand it should be borne in mind that appellant's damages are only those which he sustained by virtue of the injunction and receivership aforesaid which were in fact only a few days. Such portions of the expenses set forth in the counterclaim suit *on its merits* are not recoverable."

The test to apply in such cases is to delete from the original bill the prayer for injunction and examine what remains—if it then appears that remaining is the suit on the merits of the principal question to be determined by the court, then the issuance of the injunction is ancillary to the main question. Chrisman v. Schmickle (Iowa), 230 N.W. 550. Where the issuance of an injunction is the principal purpose of a suit, and not merely collateral or incidental,

recovery of attorney's fees and other expenses is proper, likewise if a defendant incurs expenses for the dismissal of an injunction he is entitled to recover his expenses.

In the instant case it appears that the arguments of the parties in the original suit were all directed to the question—*Were the rates proposed by the board confiscatory?* No motion to dissolve the injunction was ever made. Nothing is alleged in plaintiff's bill to indicate that any expense was incurred by reason of the issuance of the injunction. *The board would have incurred the same expense if the injunction had never been issued.*

There is no genuine issue of fact to be determined here and I hold on the law that absent proof (1) that expense was incurred in the dismissal of the injunction, or (2) that the injunction was the principal purpose of the suit in which the bond was furnished, or (3) that the phase of the suit which required the bond was inseparable from the other portions of the complaint (as in a receivership), there can be no recovery under an injunction bond where the injunction was merely ancillary or incidental to the determination of the principal question.

Because the principal question to be determined in the former case was the alleged confiscatory nature of the proposed rates, because the injunction was issued to maintain the *status quo* pending the determination of such principal question, and because all the expenses for which recovery is here sought were incurred in defense of the suit on such principal question, such expenses are not "legally recoverable" in this proceeding. This question having been determined, it is unnecessary to decide the remaining questions presented. An appropriate order may be prepared from this opinion.